UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARK STEVEN BROOKE,

      Petitioner,

v.                      Case No: 2:13-cv-895-FtM-29CM

MICHAEL   D.   CREWS   and
ATTORNEY GENERAL OF FLORIDA,
Pamela Jo Bondi,

      Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Mark Steven Brooke ("Petitioner") who is presently confined at the Moore Haven Correctional Institution in Moore Haven, Florida (Doc. 1, filed December 30, 2013). Petitioner, proceeding *pro se*, attacks the convictions and sentences entered by the Twentieth Judicial Circuit Court in Lee County, Florida for violation of probation. Id. Respondent filed a response to the petition (Doc. 9). Petitioner did not file a reply.

_____

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004) (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Petitioner raises four claims in his petition. Because the Court concludes that each claim must be dismissed or denied, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

I.   **Background and Procedural History**

On November 29, 2000, Petitioner pleaded guilty to DUI manslaughter (count one), DUI with serious bodily injury (count two), and three counts of DUI with damage to person or property (counts three through five) (Ex. 1 at 40-44). He was sentenced in accordance with a plea agreement to ten years in prison followed by five years of probation on count one and to a consecutive term of five years of probation on count two (Ex. 1 at 36-37). He received concurrent sentences of one year in prison on counts three through five. Id. Florida's Second District Court of Appeal affirmed Petitioner's convictions, but remanded for a corrected probation order consistent with a prior trial court order correcting a sentencing error (Ex. 5); Brooke v. State, 807 So. 2d 777 (Fla. 2d DCA 2002).

On March 9, 2010, an affidavit was filed alleging that Petitioner had violated the terms of his probation (Ex. 7 at 34-39). A revocation hearing was held (Ex. 7A). After the hearing, the state court found that Petitioner had violated the terms of

his probation and revoked the order of probation. Petitioner was sentenced to 258 months in prison with credit for all time previously served. <u>Id</u> at 52-81, 101. In an order rendered on February 7, 2011, the trial court entered an amended order correcting the conditions of probation Petitioner was alleged to have violated (Ex. 7C at 230). Florida's Second District Court of Appeal *per curiam* affirmed Petitioner's judgment and sentence (Ex. 10); <u>Brooke v. State</u>, 93 So. 3d 1022 (Fla. 2d DCA 2011).

On April 2, 2012 Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 12). The post-conviction courts denied all claims in a detailed order (Ex. 15). Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 18).

Petitioner signed the instant petition on December 28, 2013 (Doc. 1).

## II. <u>Governing Legal Principles</u>

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

    "Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  State courts "must reasonably apply the rules 'squarely

established' by [the Supreme] Court's holdings to the facts of each case. White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406).  The petitioner must show that the

state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting Wood v. Allen, 558 U.S. 290, 293 (2010)).

**B.  Standard for Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell

below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id.  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

reliable." <u>Strickland</u>, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

### C.    Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-76 (1971)).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  <u>Snowden v. Singletary</u>, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be

required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec' y, Dep't of Corr., 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); Murray v. Carrier, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. Crawford v. Head, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986).   Actual innocence means factual innocence, not legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995).  "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

## III. **Analysis**

### A.   **Claim One**

Petitioner asserts that counsel was ineffective for failing to adequately argue that the behavior leading to his disorderly intoxication charge could have been caused by a medical condition (Doc. 1 at 3).  Petitioner raised this claim in his Rule 3.850 petition.  The post-conviction court summarized the testimony presented at his revocation hearing and dismissed the claim as unsupported by the record:

> Defendant alleges that counsel was ineffective
> by failing to "correctly argue Defendant's
> reasonable    hypothesis    of    innocence."

Specifically, Defendant claims that counsel failed to present evidence of his diabetes, seizures, and brain trauma as a defense to the disorderly intoxication charge. Defendant claims that he had just suffered a grand mal seizure when he was found by the Lee County police officer, and that what she observed as indicators of severe intoxication were in fact symptoms of a diabetic-related seizure. Defendant acknowledges that trial counsel "was trying to develop [these] issues," but argues that "[c]ounsel never stood up and argued that Defendant had a diabetic seizure and his bizarre behavior was a direct result of the seizure." He further claims that he was available to testify at the VOP, did in fact testify, but that "[c]ounsel never asked the right questions!" Defendant concludes that the outcome of the proceedings would have been different had counsel "properly raised . . . and properly argued this reasonable hypothesis of innocence."

The record reflects that a concerned citizen alerted a Fort Myers police officer about a man who may have been in need of assistance of some kind. When the officer went to the location indicated, she found Defendant sitting on the sidewalk, unresponsive. She testified at the VOP hearing that she observed that Defendant smelled of alcohol, had red, watery, bloodshot eyes, and slurred speech. She called for medical assistance and an EMT arrived. The EMT also testified that Defendant smelled of alcohol. The EMT tried to conduct a medical assessment of Defendant, but Defendant has uncooperative, belligerent, and spat on the EMT.

On cross examination, defendant counsel asked the officer if she had experience in dealing with people who had diabetes and traumatic brain damage. She answered that she had received training in dealing with people with diabetes and was aware of the signs that accompany the illness such as "the smell from the breath and some of the body behaviors."

She also testified that she had encountered people who had had traumatic brain damage over the course of her career. On direct examination, the State asked the EMT if he had any training dealing with people who had diabetes, to which he answered "yes." On cross-examination, defense counsel asked the EMT if he had experience in dealing with people who had traumatic brain damage. The EMT replied that he was trained primarily on acute brain trauma and that he had "not had the experience of dealing with someone . . . [with a] post traumatic brain injury."

Counsel also called Defendant's mother to testify to Defendant's conditions. Her testimony revealed that Defendant was "extremely diabetic" and that he had suffered "some brain damage from two different times," once in high school and once just within the year prior to the VOP hearing. The most recent trauma was the result of a seizure. She also testified that after a seizure, it was common for Defendant to be "very disoriented . . . be very scared or very aggressive at different times." The record also reflects that Defendant testified that he had a seizure two days after he was incarcerated. At the conclusion of the hearing, the trial court addressed Defendant, saying "I realize that you may have some medical issues, but I also realize that you had have a massive problem with alcohol and that resulted in someone dying sometime. And apparently that's made such an impression on you that you continue to drink in excess." Having reviewed all of the above, it appears that counsel did argue Defendant's medical conditions as a defense, presented evidence to that effect, and that the trial court noted the medical conditions when it expressly found a willful and substantial probation violation. As to Defendant's claim that counsel did not directly argue that Defendant's behavior was the result of a diabetes-related seizure, or question Defendant in such a manner as to have Defendant state that he had had a diabetes-

- 12 -

> related seizure, even if counsel had been
> ineffective, Defendant cannot show prejudice
> as the record conclusively reflects that
> Defendant's medical conditions were
> discussed, considered by the court, and
> rejected as a defense.

(Ex. 15 at 2-4) (citations to the record omitted).  Florida's
Second District Court of Appeal *per curiam* affirmed (Ex. 18).  A
review of the record supports the post-conviction court's
conclusions.

The transcript of Petitioner's revocation hearing indicates
that the crux of the defense was that Petitioner suffered from
diabetes and brain damage and was prone to seizures which could
mimic the signs of intoxication (Ex. 7A at 52-80).  Counsel
attempted to support that defense with questions to Lee County
Sheriff's Officer Susan Daily regarding her experience with
diabetics and people with brain injury (Ex. 7A at 63-64).  Officer
Daily admitted that both diabetics and those suffering from brain
damage can suffer from disorientation. Id. at 63-64.  EMT Robert
Johansson testified on direct examination that the consumption of
alcohol could adversely affect people with diabetes. Id. at 69.
On cross-examination, Johansson admitted that people who suffered
from brain damage could have increased aggressive behavior and
"uncontrollable emotional difficulty." Id.at 70-71. Petitioner's
mother testified that Petitioner was diabetic, suffered from
seizures, and had brain damage from two different injuries. Id. at

72.  She testified that after he suffered a seizure, Petitioner could be disoriented, scored, and very aggressive. Id.  Petitioner testified that he suffered a seizure only two days after his disorderly conduct arrest. Id. at 76.

Counsel set forth a reasonable defense that Petitioner's medical conditions, not his alcohol consumption, could have caused the behavior that led to his arrest for disorderly intoxication. The trial court recognized Petitioner's medical conditions, but attributed his behavior to his "massive problem with alcohol." (Ex. 7A at 80).  That the trial court did not believe Petitioner's theory of defense does not render counsel's performance deficient. This Court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983). Petitioner fails to satisfy either Strickland prong, and Claim One is denied pursuant to 28 U.S.C. § 2254(d).

### B.  Claim Two

Petitioner asserts that the trial court erred because he was found to have violated probation based upon a charge that was subsequently dismissed by the state (Doc. 1 at 9).  Petitioner asserts that because "the criminal offense that formed the basis of the V.O.P. was dismissed, [he] should be given a new V.O.P. hearing, where the judge can take into consideration the dismissal of the misdemeanor offense that is the basis for the V.O.P." Id.

at 12.  Petitioner claims that the dismissal of the disorderly intoxication charge is "newly discovered evidence" entitling him to a new hearing. Id.

Petitioner raised this claim in his Rule 3.850 motion where he argued, in terms of state law only, that a new revocation hearing "would probably produce a different result." (Ex. 12 at 19).  Respondent argues that Petitioner has not properly exhausted this claim because he failed to present its constitutional dimension to the state court.  Indeed, although Petitioner's appellate brief supported his argument with citations to Florida case law, he did not reference any federal case or argue that the state court violated his constitutional rights.  Petitioner's state law arguments presented in his Rule 3.850 motion leave § 2254(b)(1)'s exhaustion requirement unsatisfied. Duncan, 513 U.S. at 365-66.  "The exhaustion doctrine requires the petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right." Pearson v. Sec'y, Dep't of Corr., 273 F. App'x 847, 849-50 (11th Cir. 2008) (citation omitted).  As part of such a showing, the claim presented to the state courts "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Reedman v. Thomas, 305 F. App'x 544, 545-46 (11th Cir. 2008) (internal citation omitted).

In raising Claim Two in the state courts, Petitioner made no reference to his federal constitutional rights, and as a result, he did not properly exhaust this claim. See Pearson, 273 F. App'x at 847 (claim unexhausted when petitioner cited exclusively to state cases, all of his substantive arguments addressed state law, and nothing in the argument alerted the state court to a federal due process claim).  Petitioner has not alleged that some external factor impeded his efforts to properly raise this claim on direct appeal. Wright, 169 F.3d at 703.  Nor has Petitioner presented new, reliable evidence to support an actual innocence claim. Schlup, 513 U.S. at 324.  Because it raises no properly exhausted issue of federal law, Claim Two is dismissed.

Even had Petitioner exhausted this claim, he is not entitled to federal habeas relief. See 28 U.S.C. § 2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  To the extent Petitioner argues entitlement to habeas relief due to the state court's misapplication of state law, such a claim is not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Moreover, Petitioner fails to account for the different standards of proof applicable in a criminal prosecution (proof beyond a

reasonable doubt) and a probation revocation proceeding (proof by a preponderance of the evidence). See State v. Jenkins, 762 So. 2d 535, 536 (Fla. 4th DCA 2000) ("To meet its burden in a violation of probation proceeding, the state need only demonstrate by a preponderance of the evidence that the defendant committed the subject offense.  As that is a lesser standard than is required to prove the criminal charge, the state may still have sufficient evidence to meet its lesser burden.")(internal citation omitted). The fact that the State dismissed his public intoxication charge did not preclude the revocation court from determining that the State proved by a preponderance of the evidence that Petitioner violated the terms of his probation. See State v. Green, 667 So. 2d 959, 961 (Fla. 2d DCA 1996) ("It has long been the law that a new criminal charge can result in a violation of probation even if the defendant is acquitted of the new offense.").

Petitioner has failed to show that the state court's rejection of this claim was contrary to clearly established federal law or was based upon an unreasonable determination of the facts.  In addition to being unexhausted, Claim Two is denied on the merits.

### C.  Claim Three

Petitioner asserts that trial counsel "was ineffective for failing to point out to the court that Petitioner was allowed to consume alcohol." (Doc. 1 at 16).  Petitioner asserts that he suffered prejudice from counsel's omission because "the judge was

under the impression that Petitioner was not allowed to consume any alcohol.  The correct condition of Petitioner's probation was that [he] could not use alcohol to excess.  Petitioner may have been violated simply for having one drink where the judge believed Petitioner was not allowed to drink at all." <u>Id.</u>

Petitioner raised this claim in his Rule 3.850 motion where it was denied on the ground that counsel did raise the issue at the VOP hearing and that the trial court had determined that Petitioner had used intoxicants to excess (Ex. 15 at 5-6). Florida's Second District Court of Appeal *per curiam* affirmed.  A review of the record supports the state court's findings.

At the VOP hearing, the court asked whether it was a condition of Petitioner's probation not to consume any alcohol (Ex. 7A at 78).  Counsel stated that, "as far as no consumption of alcohol, the – the order of probation was not put into evidence.  **And I do not believe the order of probation says no consumption of alcohol**." <u>Id</u>. at 78-79 (emphasis added).  When the state asked the court to sentence Petitioner to the Department of Corrections "because of the fact that his alcohol consumption is a violation[,]" the following exchange occurred:

> COUNSEL: I believe that is a misrepresentation of the order of probation. **The order of probation says he will not use intoxicants to excess.**

> STATE:    The State would submit that this is to excess based on the testimony of the deputy and the EMT.
>
> COURT:    I realize that you may have some medical issues, but I also realize that you have a massive problem with alcohol and that resulted in someone dying sometime.   Any apparently that's made such an impression upon you that **you continue to drink in excess**.

(Ex. 7A at 80) (emphasis added).   Because the allegations raised in Claim Three are completely refuted by the record, Petitioner cannot satisfy either prong of the <u>Strickland</u> analysis.   Claim Three is denied pursuant to 28 U.S.C. § 2254(d).

**D.   Claim Four**

Petitioner asserts that he cannot be sentenced on count two of his original conviction because his original "judgment and sentence applied to counts 1, 3, 4, and 5." (Doc. 1 at 18).   He asserts that, because he was "never originally adjudicated, convicted, or sentenced" on count two, he cannot be in violation of his terms of probation on count two. <u>Id.</u>

Petitioner raised this claim in his Rule 3.850 petition where the post-conviction court rejected it as completely refuted by the record:

> [Petitioner] alleges that the sentence imposed on August 9, 2010 for Count 2 is illegal because he was never adjudicated or sentenced on this count in November 29, 2000.   He bases this claim on his December 7, 2000 judgment and sentence, stating that it "applie[s] to

> counts 1, 3, 4, and 5, only." However the
> transcript of Defendant's original sentencing
> hearing, reflects that he pled guilty to Count
> 2 and received a sentence of 5 years of
> probation on this count, consecutive to the 5
> years of probation imposed in Count 1. This
> is also reflected on the November 29, 2000
> order of probation . . . which states that
> Defendant "is hereby ordered and adjudged . .
> . [to] be committed to the Department of
> Corrections for a term of <u>ten (10) years
> (Count I)</u>, with credit for jail time . . .
> [followed by] probation for a period of <u>five
> (5) years (Counts I and II consecutive</u>) under
> the supervision of the Department of
> Corrections." Additionally, the plea form . .
> . reflects the same.

(Ex. 15 at 6) (emphases in original) (internal citation to the

record omitted). Florida's Second District Court of Appeal *per

curiam* affirmed (Ex. 18).

Petitioner does not present clear and convincing evidence to

refute the state court's factual finding that he pleaded guilty,

and was sentenced, on count two of the information. To the

contrary, ample record evidence supports the state court's

conclusions. At the plea colloquy and sentencing hearing, the

trial court stated:

> In count two, DUI serious personal injury, I
> adjudicate [Petitioner] to be guilty, place
> [Petitioner] on five years of probation
> consecutive to count one, which means you have
> ten years of probation. Same terms and
> conditions as before.

(Ex. 1 at 36).   Petitioner's Judgment of Guilt found Petitioner guilty on both counts one and two, and set forth the probation portion of sentencing as follows:

> It is hereby ordered and adjudged that you be committed to the Department of Corrections for a term of **ten (10) Years (Count 1)**, with credit for jail time.   After you have served <u>ten(10) Years</u> of the term, you shall be placed on probation for a period of **five(5) Years, (Counts I and II consecutive)** under the supervision of the Department of Corrections, subject to Florida law.

(Ex. 1 at 66)(emphases in original).   Based on the record, fairminded jurists could conclude that Petitioner was adjudicated guilty and sentenced on count two of his indictment.   Accordingly, Petitioner is not entitled to habeas relief on Claim Four.   <u>Loggins v. Thomas</u>, 654 F.3d 1204, 1220 (11th Cir. 2011) ("[I]f some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied.").

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  <u>Certificate of Appealability</u>[2]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003).  Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

---

[2] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." <u>Id.</u> As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

1.   The Florida Attorney General is dismissed from this action.

2.   Claim Two of the 28 U.S.C. § 2254 petition for habeas corpus relief filed by Mark Steven Brooke (Doc. 1) is **DISMISSED**, alternatively, Claim Two is **DENIED.** All remaining claims are **DENIED**.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___4th___ day of August, 2015.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Mark Steven Brooke
Counsel of Record